Q1B

FILED - GR
December 2, 2009 3:37 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ___ald_/___

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **Lois Herring,** | ) | |
| | ) | |
| Plaintiff, | ) | **1:09-cv-1089** |
| | ) Hon. | **Gordon J Quist** |
| v. | ) | **U.S. District Judge** |
| | ) | |
| **Bureau of Collection Recovery, LLC,** a Minnesota limited liability company, and **Jefferson Capital Systems, LLC,** a Georgia limited liability company, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**Complaint**

**I.   Introduction**

1.    This is an action for damages, brought against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

**II.   Jurisdiction**

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.   Parties**

3.    Plaintiff Lois Herring is a natural person residing in Kent County, Michigan. Ms.

1

Herring is a "consumer" and "person" as the terms are defined and/or used in the FDCPA.  Ms. Herring is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MOC.

4. Defendant Bureau of Collection Recovery, LLC ("BCR") is a Minnesota limited liability company, with offices at 7575 Corporate Way, Eden Prairie, Minnesota 55344.  In July 2009, BCR applied for and received a Certificate of Authority to Transact Business in Michigan for the stated purpose of "Debt Collection."  The registered agent for BCR in Michigan is The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025.  According to the BCR website (www.bureauofcollection.com), "BCR is an independently owned, national collection agency."  BCR uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  BCR regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  BCR is a "debt collector" as the term is defined and/or used in the FDCPA.  BCR is licensed (No. 2401002335) by the State of Michigan to collect debts in Michigan.  BCR is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

5. Defendant Jefferson Capital Systems, LLC ("JCS") is a Georgia limited liability company.  In 2003, JCS applied for and received a Certificate of Authority to Transact Business in Michigan for the stated purpose of "Financial Services."  The registered agent for JCS in Michigan is CSC-Lawyers Incorporating Service (Company), 601 Abbott Road, East Lansing, Michigan 48823.  According to the JCS website (www.jeffersoncapitalsystemsllc.com), JCS "has developed innovative, non-traditional debt recovery solutions that are customized to help support and augment you current collection strategies."  JCS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  JCS regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. JCS is a "debt collector" as the term is defined and/or used in the FDCPA. JCS is licensed (No. 2401001842) by the State of Michigan to collect debts in Michigan. BCR is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

**IV. Facts**

6. Ms. Herring had a credit account (No. **** **** **** 3122) with Fingerhut Direct Marketing ("Fingerhut") which she used to purchase goods and/or services for personal, family and/or household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and/or used in the FDCPA and MOC.

7. Fingerhut later claimed that Ms. Herring did not pay the debt in full and that the account went into default.

8. Ms. Herring disputes the alleged debt.

9. Ms. Herring refuses to pay the alleged debt.

10. JCS purchases delinquent consumer debt at a discount, often paying less than ten cents on the dollar. JCS then attempts to collect the purchased debt and/or hires other entities to collect the purchased debt on behalf of JCS.

11. JCS claimed to have purchased Ms. Herring's allegedly delinquent Fingerhut account and related alleged debt.

12. JCS hired BCR to collect the alleged debt from Ms. Herring.

13. By letter dated October 12, 2009, BCR wrote Ms. Herring and demanded payment of the debt. The letter identified the "Creditor" to be "FINGERHUT DIRECT MRKTING." A copy of the letter is attached hereto as Exhibit A.

3

14. The FDCPA requires a debt collector within a specified time frame to send the consumer a written notice containing "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2).

15. The letter sent by BCR to Ms. Herring failed to state the name of the creditor to whom the debt is owed.

16. The letter sent by BCR to Ms. Herring falsely represented or implied that the debt was owed to "FINGERHUT DIRECT MRKTING."

17. When BCR sent the letter to Ms. Herring, the alleged debt actually was owned by JCS.

18. When BCR sent the letter to Ms. Herring, the alleged debt actually was owed to JCS.

19. When BCR sent the letter to Ms. Herring, BCR was not attempting to collect the debt on behalf of Fingerhut.

20. When BCR sent the letter to Ms. Herring, BCR was attempting to collect the debt on behalf of JCS.

21. BCR failed to send Ms. Herring a timely written notice containing "the name of the creditor to whom the debt is owed" as required by 15 U.S.C. § 1692g(a)(2).

22. In the one-year period immediately preceding the filing of this complaint, BCR sent a letter in the form of Exhibit A to more than one hundred consumers with Michigan mailing addresses, attempting to collect a debt allegedly owed to JCS, but failing to identify JCS as the creditor to whom the debt was owed.

23. On or about November 17, 2009, Ms. Herring as well as her representative spoke

by telephone with a female BCR employee identified perhaps as "Ira." In the ensuing conversation, the BCR employee made the following statements:

    a)    Ms. Herring's account with Fingerhut had been delinquent since February 28, 2008 and Ms. Herring owed $265.81.

    b)    The debt was now owned by JCS.

    c)    JCS had hired BCR to collect the debt from Ms. Herring.

    d)    BCR had authority from JCS to settle the debt for a payment of $186.07.

Ms. Herring's representative told the BCR employee that Ms. Herring disputed the debt. Hearing that, the BCR employee stated that to dispute the debt, Ms. Herring was required to contact Fingerhut and dispute the debt directly with Fingerhut. When Ms. Herring's representative continued to state that Ms. Herring disputed the debt, the BCR employee stated that to dispute the debt, Ms. Herring was required to dispute the debt in writing. The BCR employee warned that if Ms. Herring did not arrange with BCR to pay the debt, the account would be placed with another collection agency and "late payment fees" and "collection fees" would be added to the amount owed.

    24.    On or about November 17, 2009, Ms. Herring as well as her representative spoke by telephone with a male BCR employee identified perhaps as "Brandon." In the ensuing conversation, the BCR employee made the following statements:

    a)    If Ms. Herring did not pay the Fingerhut debt, derogatory information regarding the account could be included on Ms. Herring's credit reports for a period of seven to ten years, with the seven to ten year reporting period beginning on the date derogatory information regarding the account is first reported to the credit

bureaus.

b) Ms. Herring had lost her right to dispute the debt because the time to dispute the debt had expired.

c) BCR had no obligation to communicate to the credit bureaus that Ms. Herring disputed the debt, even if BCR later reported information regarding the debt to the credit bureaus.

d) In order to dispute the debt, Ms. Herring was required to dispute the debt in writing.

e) Ms. Herring did not have the right to orally dispute the debt.

25. The BCR employees misrepresented Ms. Herring's rights under the FDCPA, and in particular, Ms. Herring's right to dispute the debt and the process for disputing a debt..

26. The BCR employees falsely represented that Ms. Herring would need to communicate directly with Fingerhut to dispute and obtain validation of the debt, violating the FDCPA. *See* 15 U.S.C. § 1692g; *Macarz v. Transworld Systems, Inc.*, 26 F.Supp.2d 368 (D.Conn. 1998).

27. The FDCPA does not require the consumer to provide *any reason at all* in order to dispute a debt. *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002); (*Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey*

*v. Satter, Beyer & Spires*, 1999 WL 301650 (N.D. Ill. May 3, 1999); *DeSantis v. Computer Credit, Inc.*, 269 f.3d 159 (2nd Cir. 2001); *Mejia v. Marauder Corporation*, 2007 WL 806486 (N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute). The FDCPA allows the consumer to orally dispute a debt. *Brady v. The Credit Recovery Company, Inc.*, 160 F.3d 64 (1st Cir. 1998).

28. The BCR employees falsely represented that Ms. Herring could not dispute the debt unless she put her dispute in writing.

29. The BCR employees falsely represented that Ms. Herring could not dispute the debt orally.

30. The BCR employees falsely represented that Ms. Herring could not dispute the debt over the phone.

31. The BCR employees falsely represented that the time for Ms. Herring to dispute the debt had expired.

32. BCR failed to send Ms. Herring a timely and complete written notice of her rights as required by 15 U.S.C. § 1692g.

33. BCR has been sued multiple times in various United States District Courts for allegedly violating the FDCPA.

34. The acts and omissions of the BCR employees done in connection with efforts to collect a debt from Ms. Herring were done wilfully.

35. The statements made by the BCR employees done in connection with efforts to collect a debt from Ms. Herring were made wilfully.

36. The BCR employees wilfully violated the FDCPA and MOC in connection with

efforts to collect a debt from Ms. Herring.

38. BCR wilfully violated the FDCPA and MOC in connection with efforts to collect a debt from Ms. Herring.

38. JCS has derivative liability for the acts and omissions of BCR and its employees, done in connection with efforts to collect a debt on behalf of JCS.

39. As an actual and proximate result of the acts and omissions of defendant and its employee, plaintiff has suffered actual damages and injury, including but not limited to, fear, embarrassment, stress, mental anguish, emotional stress, and suffering for which she should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1– Fair Debt Collection Practices Act

40. Plaintiff incorporates the foregoing paragraphs by reference.

41. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

    a) Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

    b) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

    c) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d) Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

### Count 2– Michigan Occupational Code

42. Plaintiff incorporates the foregoing paragraphs by reference.

43. Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor; and

c) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: December 2, 2009

_____
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com